IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PATRICK GONZALES,<br>*Plaintiff* | § § § | |
| v. | § § § § | **CIVIL ACTION FILE NO.:** |
| CITY OF CORPUS CHRISTI, TEXAS,<br>RONALD L. OLSON, MARGIE SILVA<br>aka MARGIE FLORES and<br>KIMBERLY JOZWIAK<br>*Defendants* | § § § § § § | **JURY TRIAL REQUESTED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

**NOW COMES** Plaintiff Parick Gonzales filing this, his *Plaintiff's Original Complaint,* and brings this action against the City of Corpus Christi, Texas, Ronald L. Olson, Margie Silva aka Margie Flores and Kimberley Jozwiak, as said Defendants, jointly and severally, have denied Plaintiff his rights as guaranteed by the Constitution and laws of the United States of America and the State of Texas.

I.

**JURISDICTION and VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state claims that will be set forth in this Complaint.

2.      Plaintiff, by and through the above, has complied with all conditions precedent and exhausted all administrative remedies prior to filing suit.

3. Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claim arose in accordance to 29 U.S.C. §1391(b).

## II.

## PARTIES

4. Plaintiff Patrick Gonzales (hereinafter "***Plaintiff***") is a resident of Corpus Christi, Nueces County, Texas.

5. Defendant City of Corpus Christi, Texas (hereinafter "***the City***") is a political subdivision of the State of Texas and can be served with summons upon City of Corpus Christi Mayor Nelda Martinez at 1201 Leopard Street in Corpus Christi, Texas 78401.

6. Defendant Ronald L. Olson (hereinafter ***"City Manager Olson)*** was, at all times material to this suit, the City Manager employed by the City of Corpus Christi. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the City of Corpus Christi. ***City Manager Olson*** can be served with summons at his place of employment at the City Hall Building of located at 1201 Leopard St. in Corpus Christi, Texas.

7. Defendant Margie Silva aka Margie Flores (hereinafter "***Judge Flores***") was, at all times material to this suit, a municipal court judge employed by the City of Corpus Christi. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the City of Corpus Christi. ***Judge Flores*** can be served with summons at her place of employment at the City of Corpus Christi Municipal Court Building located at 120 N. Chaparral Street in Corpus Christi, Texas.

8. Defendant Kimberly Jozwiak (hereinafter "**Director Jozwiak**") was, at all times material to this suit, the Director of Municipal Court employed by the City of Corpus Christi. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority with the City of Corpus Christi. **Director Jozwiak** can be served with summons at her place of employment at the City of Corpus Christi Municipal Court Building located at 120 N. Chaparral Street in Corpus Christi, Texas.

## III.

## STATEMENT OF FACTS

9. Whenever in this Complaint it is alleged that any Defendant did any act, thing and/or omission, it is meant that Defendant and/or Defendant's agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's agents, servants, employees or representatives.

10. *HISTORICAL BACKGROUND*: **The City** has three separate divisions at Municipal Court: *Administrative, Judicial* and *Legal*. The *Administrative* division is headed by a Director, *Judicial* has a Presiding Judge in charge of that department and *Legal* is administered by a Chief Prosecutor. **Judge Flores** was appointed Municipal Court Judge on or about 2010 after the resignation of former municipal court Judge Deanie King who at the time was the subject of a State judicial investigation. Since **Judge Flores'** appointment, she, with the knowledge and approval from **the City** and **City Manager Olson**, has engaged in a concerted effort to gain total and complete control of the *Administrative, Judicial* and *Legal* Divisions of Municipal Court,

resulting in several terminations, resignations and concomitant lawsuits for, *inter alia,* civil rights violations, wrongful terminations, retaliation, defamation, official oppression and malicious prosecution:  **LAWSUITS:**  *Monica Lewis v. City of Corpus Christi* **(Case No. 2:12-cv-00016)**; *Melissa Madrigal v. City of Corpus Christi* **(Case No. 2:13-cv-00132)**; *Nora G. Rodriguez v. City of Corpus Christi* **(Case No. 2:13-cv-00134)**; *Rene Mendiola and Cleofas Rodriguez v. City of Corpus Christi and Margie Silva a/ka Margie Flores* **(Case No. 2:14-cv-473)**; *Frances Rios v. City of Corpus Christi, Margie Silva a/k/a Margie Flores, Yvette Aguilar and Kimberly Jozwiak* **(Case No. 2:14-cv-409)**.  **TERMINATIONS:**  *Monica Lewis, Nora G. Rodriguez, Michelle Carey, Melissa Madrigal, Amanda Sanchez, Suzie Maldonado, Rene Mendiola, Cleofas Rodriguez, Frances Rios, Jennifer Saucedo, Jesse Gomez, Gerald Ochoa and Michael Cantu.*  **RESIGNATIONS:**  *Roy Guerrero, Juan Perez, David Criz, Orlando Sanchez, Megan Koch, Jacqueline Johnson, Sonya Miranda, Gabriela Saucedo, George Barrera, Abby Flores, Kathryn Peña and Luis Rocha.*   Since 2012, ***Judge Flores*'** main accomplice and co-conspirator relating to this illicit agenda has been ***City Manager Olson*** and ***Director Jozwiak***.  ***City Manager Olson*** specifically requested the police chief "to look into rumors of corruption within city hall."  "City hall", however, was never investigated.  The investigation at the direction of ***City Manager Olson*** focused on the Municipal Court *Administration*.  ***Judge Flores, City Manager Olson*** and ***Director Jozwiak*** were directly or indirectly involved in each of the matters relating to the aforementioned **LAWSUITS, TERMINATIONS** and **RESIGNATIONS** involving said ***City*** employees.

11.     On or about January 13, 2012, ***Plaintiff*** was appointed Lead Deputy City Marshall, working directly under the Acting Municipal Court Director, Jay Reining, a former assistant City

Attorney. Jay Reining was replaced by *Director Jozwiak* on or about November 5, 2012. Almost immediately *Director Jozwiak* and *Judge Flores*, with the assistance and approval of *City Manager Olson*, began to systematically demote and terminate city employees working at Municipal Court.

12. On January 11 -13, 2013, *Plaintiff* was out of the office due to the deaths of his grandmother and uncle. On *Plaintiff's* first day bact to work, *Director Jozwiak* demoted him to deputy because he was allegedly listening to the ESPN and news stations on his computer during work hours. It should be noted that during this same period *Director Jozwiak* was notified that Michae De La Garza was watching NETFLIX movies during work hours for 7 ½ hours daily for several months. He simultaneously received a promotion and a reprimand by *Director Jozwiak.* Michael De La Garza was promoted as the Chief of the Marshall's office. Michael De La Garza continued to receive protection and absolution from *Director Jozwiak, Judge Flores, City Manager Olson* and *the City* for his nefarious and unlawful activities. Specifically, on or about January 26, 2013, Michael De La Garza filed a false claim that he was accidently shot at the Corpus Christi Police shooting range. The *Plaintiff* and two Marshall's deputies, Roy Guerrero and Orlando Sanchez, informed *Director Jozwiak* and *the City* that they were present during the alleged incident and that Michael De La Garza was not shot as he alleged. After being formally appointed head City Marshall by *Director Jozwiak* and *the City*, Michael De La Garza provided false statements to Corpus Christi detectives and tampered with governmental records relating to an investigation of one of his deputies who was not licensed by the Texas Commission on Law Enforcement agency, yet was allowed by Michael De La Garza to wear a police uniform, carry a gun and make arrests. With *Director Jozwiak* and *the City's* approval, Michael De La Garza

remains the head Marshall for *the City*.

13.     On February 15, 2013, Michael De La Garza presented *Director Jozwiak* with a copy of a telephone text message allegedly from *Plaintiff* stating, in part, that "they (*Judge Flores* and *Director Jozwiak*) would get theirs." *The City* considered the message to be threatening and disparaging.

14.     On February 19, 2013, Assistant Chief of Police Mark Schauer and Captain Denny Asbury, both police officers for the *the City*, met with *Plaintiff* to give him a document entitled **ADMINISTRATIVE LEAVE FOR FACT-FINDING INVESTIGATION/DIRECT ORDER** from *Director Jozwiak*. *Plaintiff* was "banned" and "prohibited", inter alia, in said **DIRECT ORDER** accessing any of *the City's* computers, accessing any of the *the City's* e-mails and/or computer applications and entering the Corpus Christi Municipal Court, the Corpus Christi Police Department, the Corpus Christi City Hall and the Corpus Christi Detention Center, including all adjacent parking lots. Interestingly, said document did not state the complaint, allegations or reasons for conducting a fact-finding investigation. Both Assistant Chief Schauer and Captain Asbury informed the *Plaintiff* that they were not allowed to give him any further information as per *the City's* order.

15.     On March 1, 2013, two assistant City of Corpus Christi attorneys conducted an interview of *Plaintiff* that lasted approximately four (4) hours. It was a very emotional interview and all of the attendees, including the *Plaintiff*, cried. The lawyers for *the City* expressed their sympathies for what the *Plaintiff* had to endure and questioned the reliability of the accusations. This was the first time that *Plaintiff* was told that the investigation involved possible violence in the workplace. No other specifics were provided.

16. On March 4, 2013, *Plaintiff* was informed that the tape recorder had mysteriously malfunctioned during the March 1, 2013 interview. No explanation was provided to the *Plaintiff* as to what caused the malfunction. The second interview, conducted on March 4th, was absent the emotions, crying, sympathies and any expression of doubts by *the City's* assistant attorneys concerning the accusations.

17. The *Plaintiff* denied sending the text message in question. He was terminated by *the City* on March 14, 2013. After repeated requests by the *Plaintiff* and the hearing officer from the Texas Workforce Commission, *the City* refused to disclose the source of the text message. The *Plaintiff* attempted to provide his phone records, but *the City* would not accept them. The *Plaintiff* also offered to give his cell phone to the Corpus Christi Police Department's Internal Affairs Division so that they could extract all of his text messages. Internal Affair's had the capability to extract even deleted messages. *The City* refused to accept the cell phone for examination.

18. The Texas Workforce Commission ruled in *Plaintiff's* favor.

19. The *Plaintiff* also appealed his termination to the Corpus Christi Civil Service Commission. After receiving witness testimony and arguments of counsel, the Commission decided to reduce the termination to a 60 day suspension with reinstatement of pay and benefits on the 61st day and counseling.

20. In an unprecedented undertaking, *the City* appealed the decision to the City Council. Pursuant to *CITY CHARTER - ARTICLE VI. BOARDS AND COMMISSIONS, Sec. 2-25. (c)* "....council may order that a transcript be printed of the proceedings....No evidence shall be considered which was not presented to the civil service board. The decision of the board shall be

entitled to great deference, and shall be affirmed unless it is found to be clearly unreasonable or capricious...."

21.     On December 10, 2013, the City Council was to consider the aforementioned appeal, including *the City's* brief and the *Plaintiff's* response. As per *the City* Charter, no evidence was to be considered which was not presented to the Civil Service Board. City Council member Priscilla Leal requested the recordings of the Civil Service hearing. *The City* asserted that the hearing was recorded and had already been transcribed. Assistant City Attorney, Allison Logan, informed the Mayor and the City Council that every word of the hearing had been transcribed, but would make the audio recording available. The transcript presented to the parties contained over 195 omissions of Civil Service hearing testimony and Commission rulings. In addition, *City Manager Olson* was allowed by the Council to make an argument contrary to the *Plaintiff's* interest. *City Manager Olson* argued that the Civil Service Commission did not conduct the hearing in an appropriate manner, allowed testimony that was not relevant to the issues, did not do their job correctly, stating that the record would show that much of the information presented was not relevant. He also made the statement that "innocent people don't get a 60 day suspension". *Plaintiff* was not allowed to defend himself against these arguments. The Council decided to review this matter again in January of 2014.

22.     On January 14, 2014, *City Manager Olson* and *Judge Flores* told the Council that the *Plaintiff* had thrown a molotov cocktail (pipe bomb) at *Judge Flores'* house, making *Plaintiff's* behavior threatening, intimidating and violent. In fact, *City Manager Olson* also asserted that the *Plaintiff* threatened to kill *Director Jozwiak* and should not be allowed to return as a City employee. The Corpus Christi City Council overturned the Civil Service decision and terminated

*Plaintiff's* employment on January 14, 20014.

## IV.

## FIRST CLAIM FOR RELIEF – §1983

23.     The allegations contained in Paragraphs 9 through 22 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

24.     **Section 1983**. The Civil Rights Act of 1871 (Ku Klux Klan Act), now codified as 42 U.S.C. § 1983 as federal law provides: "Every person who, under color of any statue, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or cause to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for the redress." 42 U.S.C. § 1983.

25.     The state action requirement for standing under 42 U.S.C. § 1983 has more commonly been referred to as "color of state law," from the statute itself. *Plaintiff* is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

26.     42 U.S.C. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, *Plaintiff* alleges that Defendants, jointly and/or severally deprived him of his Fourth Amendment rights and those rights, privileges and immunities secured by the Fourth and Fifth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment.

Defendants violated this provision by the following actions, inter alia, and/or omissions:

1. Depriving him of his right to live and work at his chosen vocation, without the burden of an unjustified label of infamy. Specifically, each named Defendant herein conspired to falsely accuse the *Plaintiff* of engaging in threatening behavior and workplace violence, resulting in his termination of employment.

2. Not complying with the established Civil Service and City Charter rules in effecting his discharge from employment. A civil service classified employee has a property interest arising out of the statutory entitlement to continued uninterrupted employment. Specifically, the Civil Service hearing was not properly recorded and the Mayor and City Council for *the City* allowed oral testimony that was not presented at the hearing and did not reverse the Civil Service decision on the basis that it was "clearly unreasonable or capricious".

27. **§ 1983 - Municipal liability.** It is also well-established that municipalities are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even through such custom has not received formal approval through the body's official decision making channels. The policy, practice, procedure and custom of *the City* to allow *Judge Flores, Director Jozwiak* and *City Manager Olson* to file false charges and make false criminal allegations against Municipal Court employees to deprive said employees of their liberty and/or property interest in employment has a deplorable and shameful history. Although the following are examples of this history, this recitation is by no way exhaustive.

**Monica Lewis** was a long time employee with *the City,* having no disciplinary history. In 2012 she was promoted to the position of Interim Assistant to the *Director Jozwiak.* Her duties included management of the administrative division of the Municipal Court and City Detention Center. After she submitted a complaint about possible illegal activity and possible workplace violence by the senior staff assistant to *Judge Flores,* Monica Lewis, while on vacation, was demoted by *Director Jozwiak* to essentially a secretarial position to *Judge Flores.* Upon returning to work from her vacation, *Judge Flores* immediately tendered Monica Lewis a written notice of termination before performing any work at her new assignment. Upon information and belief, the termination occurred with the knowledge and approval of *Director Joziak* and *City Manager Olson.* This action resulted in litigation against *the City: Monica Lewis v. City of Corpus Christi* (**Case No. 2:12-cv-00016**). In addition, after the termination, *Judge Flores* falsely accused Monica Lewis of illegally entering the premises, tampering with a locked drawer and appropriating governmental records without consent. The police investigated and no charges were filed.

**Melissa Madrigal** was a Municipal Court Judge for **the City.** In February of 2013, she was unanimously re-appointed by the City Council as a Municiapal Court Judge. She had no prior disciplinary history. A few weeks after the termination of Monica Lewis, *Judge Flores* and David Loeb, a City Councilperson with *the City,* confronted Melissa Madrigal about statements she allegedly made favoring Monica Lewis and criticizing her termination. Shortly thereafter, Melissa Madrigal was identified as a fact witness for Monica Lewis in her claim for unemployment benefits against *the City* with the Texas Employment Commission. Again *Judge Flores* and David Loeb confronted Melissa Madrigal and essentially force a constructive discharge. She was given 24 hours to either resign or face immediate termination. Upon information and belief, the discharge occurred with the knowledge and approval of *Director Joziak, City Manager Olson* and *the City.* This action resulted in litigation against *the City: Melissa Madrigal v. City of Corpus Christi* (**Case No. 2:13-cv-00132**).

**Nora G. Rodriguez** was a twenty-two (22) year employee with *the City*. She had no prior disciplinary history and was the management assistant to *Director Joziak.* After submitting a written statement with *the City's* Human Resources Department concerning the questionable conduct by the senior staff assistant to *Judge Flores,* she also was given a written notice of termination by *Director Joziak* on the day of her return to work from vacation. Upon information and belief, the discharge occurred with the knowledge and approval of *Judge Flores, City Manager Olson* and *the City.* This action resulted in litigation against *the City: Nora G. Rodriguez v. City of Corpus Christi* (**Case No. 2:13-cv-00134**).

**Rene Mendiola** was the Municipal Court Director prior to his termination and had no prior disciplinary history. At the direction of *City Manager Olson,* the City Marshall and the Municipal Court Functional analyst were placed on administrative leave. Rene

Mendiola was told by *the City* to terminate their employment. Since he did not agree that these employees committed any acts to justify termination, he refused. *The City,* through the assistance of several of its employees including *Judge Flores* and *City Manager Olson,* terminated their employment and assisted with the filing of criminal charges against Frances Rios, the Municipal Court Functional Analyst. Almost immediately after refusing to sign a sworn affidavit falsely accusing Frances Rios of "fixing tickets" and engaging in the act of illegally altering governmental records, he was terminated. Upon information and belief, the discharge occurred with the knowledge and approval of *Judge Flores* and *City Manager Olson.* This action resulted in the following litigation: *Rene Mendiola and Cleofas Rodriguez v. City of Corpus Christi* **(Cause No. 2014-CCV-60065-3)** and *Rene Mendiola and Cleofas Rodriguez v. Margie Silva a/ka Margie Flores* **(Cause No. 2014-CCV-60402-1)** CONSOLIDATED and REMOVED TO *Rene Mendiola and Cleofas Rodriguez v. City of Corpus Christi and Margie Silva a/ka Margie Flores* **(Case No. 2:14-cv-473)**.

**Cleofas Rodriguez** was the Assistant Municipal Court Director prior to his termination and had no prior disciplinary history. At the direction of *City Manager Olson,* the City Marshall and the Municipal Court Functional analyst were placed on administrative leave. *The City,* through the assistance of several of its employees including *Judge Flores* and *City Manager Olson,* terminated their employment and assisted with the filing of criminal charges against Frances Rios, the Municipal Court Functional Analyst. Almost immediately after refusing to sign a sworn affidavit falsely accusing Frances Rios of "fixing tickets" and engaging in the act of illegally altering governmental records, he was terminated. Upon information and belief, the discharge occurred with the knowledge and approval of *Judge Flores* and *City Manager Olson.* This action resulted in the following litigation: *Rene Mendiola and Cleofas Rodriguez v. City of Corpus Christi* **(Cause No. 2014-CCV-60065-3)** and *Rene Mendiola and Cleofas Rodriguez v. Margie Silva a/ka Margie Flores* **(Cause No. 2014-CCV-60402-1)** CONSOLIDATED and REMOVED TO *Rene Mendiola and Cleofas Rodriguez v. City of Corpus Christi and Margie Silva a/ka Margie Flores* **(Case No. 2:14-cv-473)**.

**Frances Rios** the Municipal Court Functional Analyst for *the City.* She was a long term employee with no prior disciplinary history. She was terminated for two counts of tampering with governmental records. *Judge Flores, Director Jozwiak* and other employees of *the City*, provided false statements and information to the investigating detective to support an indictment. A jury found Frances Rios "Not Guilty" of he charges. This action resulted in the following litigation: *Frances Rios v. City of Corpus Christi, Margie Silva a/k/a Margie Flores, Yvette Aguilar and Kimberly Jozwiak* **(Case No. 2:14-cv-409)**.

In addition to the aforementioned matters, the *Plaintiff* incorporates herein the

Terminations and Resignations referenced in paragraph 10 above.

28. **§1983 - Qualified Good Faith Immunity.** Qualified good faith immunity stands for the proposition that even through the civil rights of a complainant may have been violated, if the city official, acting under color of law, engaged in the conduct in good faith there is no liability for that individual. The standard by which a city official's entitlement to good faith qualified immunity is objective not subjective. Defendants' actions judged by such objective standard protects "all but the plainly incompetent or those who knowingly violate the law." The determination of objective reasonableness must be based on a version of the facts most favorable to the *Plaintiff*. To the extent that credibility questions exist, a fact-finder continues to be necessary. In the instant case, *Plaintiff* alleges that Defendants are not entitled to claim "qualified good faith immunity." Importantly, Defendants never had a good faith belief in their conduct because they acted in a manner demonstrating that they were plainly incompetent and knowingly violated *Plaintiff's* civil rights. When the facts are taken in the light most favorable to the *Plaintiff*, it is clear that *Plaintiff* was merely performing her duties and not tampering with governmental records. *Plaintiff* has asserted a violation of her constitutional right to privacy; this right was clearly established at the time of Defendants' actions. Moreover, Defendants' actions were objectively unreasonable in the sense that they knew or reasonably should have known that the actions taken within their authority or responsibility would violate *Plaintiff 's* constitutional rights.

V.

**SECOND CLAIM FOR RELIEF - §1985**

29. The allegations contained in Paragraphs 9 through 22 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

30. Defendants herein did willfully conspire with each other to deprive Plaintiff of his property interest and due process rights relating to his employment and violated his civil rights contrary to 42 U.S.C. §1985.

## VI.

### THIRD CLAIM FOR RELIEF - - Texas - - Defamation

31. The allegations set forth in Paragraphs 9 through 22 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

32. As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law, intentionally and/or recklessly defamed *Plaintiff.* Each of the individual Defendants herein asserted as a fact that *Plaintiff* was engaging in the criminal act of threatening violence in the workplace towards *Director Jozwiak*, making his behavior threatening, intimidating and violent. In addition, *Judge Flores* and *City Manager Olson* made false accusations that the *Plaintiff* had thrown a molotov cocktail (pipe bomb) at *Judge Flores'* house. In addition, Defendants' statements involved a private issue and referred to *Plaintiff* directly by name. These Defendants' published oral statements were defamatory per se under the common law. Defendants statements injured *Plaintiff's* profession and occupation.

33. In addition, Defendants' statements were libel per se as defined by Texas Civil Practices & Remedies Code §73.001. As indicated in the previous paragraph, Defendants' statements injured *Plaintiff's* reputation and exposed him to public hatred, contempt, ridicule or financial injury and impeached *Plaintiff's* honesty, integrity, virtue or reputation.

34. Defendants' statements were false because *Plaintiff* never committed the criminal acts

described herein.  As such, Defendants are strictly liable to *Plaintiff* for the defamation.

## DAMAGES

35.   As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, *Plaintiff* has been caused to suffer general damages which include but are not limited to the following: both physical and emotional injury, including but not limited to - - emotional and mental distress, and personal humiliation and shock.

36.   Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, a prevailing party in a § 1983 case is entitled to recover his attorney's fees.  Hence, *Plaintiff* further prays for all costs and attorney fees associated with bringing the present case to trial.

37.   In addition, *Plaintiff* prays for punitive damages against all individual Defendants. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing.  Punitive damages may be assessed under § 1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others.  While municipal defendants are absolutely immune from §1983 awards of punitive damages, such damages may be awarded against a public employee or official in their individual capacity.  Therefore, *Plaintiff* alleges and prays for punitive damages against all individual Defendants, as such Defendants actually knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

**WHEREFORE PREMISES CONSIDERED**, *Plaintiff* prays that upon trial of the merits, he recover compensatory damages against Defendants, jointly and severally; that *Plaintiff*

also recover punitive damages against the individual Defendants in an amount to punish and/or deterrent to make an example of those Defendants in order to prevent similar future conduct; and, the *Plaintiff* recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, *Plaintiff* prays for all pre-judgment and post judgment interest that can be assessed against the Defendants in the event of recovery; and that *Plaintiff* recover against each Defendant any and all other general or specific relief to which she proves himself justly entitled.

Respectfully submitted,

**LAW OFFICES OF RENÉ RODRIGUEZ**
433 South Tancahua St.
Corpus Christi, Texas 78401
TELEPHONE: (361) 882-1919
FACSIMILE: (361) 882-2042
Email: rene.rodriguez@rdrlaw.com


By: **/s/ RENÉ RODRIGUEZ**
RENÉ RODRIGUEZ
State Bar No. 17148400
Southern District Bar No. 118897

**DEMAND FOR JURY TRIAL**

**Plaintiff hereby demands trial by jury pursuant to Fed.R.Civ.P. 8(b).**